# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NAIN VASQUEZ GONZALEZ,        )
                                      )

     Petitioner,               )      Civil Action No. 3:25-cv-424
                                        )

        v.                )      Magistrate Judge Maureen P. Kelly
                                        )

LEONARD ODDO, *in his official capacity as*  )      Re: ECF No. 1
*Warden of Moshannon Valley Processing*    )
*Center, et al.,*                           )
                                        )

     Respondents.         )

## <u>MEMORANDUM OPINION</u>

Petitioner Nain Vasquez Gonzalez ("Petitioner") is an immigration detainee who, at the initiation of this matter, was held at the Moshannon Valley Processing Center ("MVPC") in Phillipsburg, Pennsylvania.[1] Petitioner submitted a "Complaint and Petition for Writ of Habeas Corpus" on November 17, 2025. ECF No. 1. In the Petition, Petitioner challenges his lengthy immigration detention, and seeks an order requiring either his immediate release, or a bond hearing

---

[1] At some point after the filing of the Petition, Petitioner was transferred to the Miami Correctional Facility in Bunker Hill, Indiana. ECF No. 13 at 13. This was done without notice to this Court, and without its approval. Additionally, the Parties failed to provide timely notice of this transfer, despite their obligation to do so having been explicitly set forth in the Service Order issued on November 25, 2025. ECF No. 3 at 3.

Respondents' counsel argues that she "has no way of knowing when a detained alien is transferred." ECF No. 15 at 5 n.4. This is a truly remarkable assertion, given that her clients are responsible for Petitioner's detention, and counsel has access to the resources of the Executive Branch of the United States government. **This Court expects all litigants to comply with its orders. Parties and attorneys who fail to do so risk the imposition of sanctions.**

The respective failures of counsel notwithstanding, there is no dispute that the transfer was effected after the filing of this case, and thus it does not divest this Court of jurisdiction. See <u>Anariba v. Dir. Hudson Cnty. Corr. Ctr.</u>, 17 F.4th 434, 448 (3d Cir. 2021).

before an immigration judge ("IJ") at which the Department of Homeland Security ("DHS") bears the burden to demonstrate that he should remain detained. Id. at 55. For the reasons that follow, the Petition will be conditionally granted.[2]

## I.    RELEVANT BACKGROUND AND FACTS

In the Petition, Petitioner alleges that he is a citizen of El Salvador, who entered the United States in 2016 when he was a minor. Id. at 2. The record indicates that Petitioner was arrested as an unaccompanied minor in Texas on December 20, 2016, and was issued a Notice to Appear ("NTA") charging him with being removable pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i),[3] as "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." ECF No. 1-1 at 8. The record indicates that this NTA never was served on the Executive Office of Immigration Review ("EOIR"), the subdivision of the Department of Justice that runs the administrative immigration courts of the United States. Id.

Petitioner was released from immigration custody on January 30, 2017. Id. On August 27, 2020, Petitioner applied for asylum, withholding of removal, and protection pursuant to the Convention Against Torture ("CAT"). Id. at 15.

In 2019, while still a minor, Petitioner was arrested and charged with aggravated assault, but those charges quickly were dismissed. ECF No. 1 at 11. As an adult, Petitioner was arrested

---

[2] The Parties have consented to the jurisdiction of a United States Magistrate Judge. ECF Nos. 6 and 10.

[3] Rather than citing to the United States Code, and for reasons that are unclear, immigration officials tend to cite directly to sections of the Immigration and Nationality Act ("INA"). These citations often do not match up to the United States Code in any discernable fashion. In order to avoid unnecessary confusion, this Court will provide parallel citations to the United States Code and the INA where necessary.

in New Jersey and charged with aggravated assault and weapons violations on July 9, 2022. Id. On January 13, 2023, Petitioner was arrested and charged with possession of a controlled dangerous substance, also in New Jersey. Id.

Petitioner was detained by immigration officials subsequent to his January 13, 2023 arrest. Id.; ECF No. 1-1 at 10-12. Petitioner has remained detained since then, with a significant portion of that detention appearing to have occurred at MVPC. See ECF No. 1-1 at 46 (indicating that Petition was held at MVPC on January 17, 2024); see also id. at 81 and 88 (Petitioner still at MVPC on August 20, 2025).

Petitioner was denied immigration relief and ordered removed by an IJ on December 18, 2023. Id. at 35. The order of removal was affirmed by the Board of Immigration Appeals ("BIA") on May 3, 2024. Id. at 50. Petitioner timely filed a Petition for Review with the United States Court of Appeals for the Third Circuit, id. at 57, which was granted on September 18, 2025. Id. at 64-65. The Third Circuit instructed the BIA to remand Petitioner's case to an IJ in order to conduct a new hearing on his request of CAT protection. Id. at 64-65. The mandate was issued by the Third Circuit on November 10, 2025. Id. at 67. As a result, it is undisputed that Petitioner is not subject to a final order of removal.

Petitioner asserted in the Petition that, as of the date of filing thereof, the BIA had not acknowledged receipt of the mandate. ECF No. 1 at 12. In his Traverse, filed on February 13, 2026, Petitioner asserted that the BIA still had not remanded his case to an IJ. ECF No. 13 at 11. In a sur-reply filed on February 20, 2026, Respondents conceded that "[t]he remand is still pending."[4] ECF No. 15 at 4.

---

[4] It is most concerning to this Court that the BIA has failed to comply promptly with the express directive of the Third Circuit. This type of outrageous disregard of federal court orders must cease.

3

Since the initiation of his detention in January of 2023, Petitioner has sought bond from an IJ at least three times. The first bond motion was denied on May 2, 2023, because the IJ found that Petitioner was a danger to the community. ECF No. 11-1 at 10. A second attempt at bond was denied on September 3, 2023, because Petitioner had not established that there were sufficiently changed circumstances to justify setting aside the initial denial of bond. Id. at 1-3. Petitioner sought bond yet again in August of 2025, but an IJ denied that motion without a hearing on August 29, 2025, once again relying on a lack of changed circumstances. Id. at 12-13. During each of these attempts at bond, the burden was placed on Petitioner to justify his release.

The Petition was filed on November 17, 2025. ECF No. 1. Respondents answered the Petition on January 22, 2026. ECF No. 11. Petitioner file his Traverse on February 13, 2026. ECF No. 13. As part of the Traverse, Petitioner was ordered to provide briefing on "whether, given the duration of his detention, his due process claim should be decided according to the factors set forth in German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203, 210-14 (3d Cir. 2020)." ECF No. 14. Respondents were granted leave to submit a sur-reply on the issue of the applicability of German-Santos, and did so on February 20, 2026. ECF No. 15.

The Petition is ripe for consideration.

## II.    DISCUSSION

28 U.S.C. § 2241 allows a court to grant a writ of habeas corpus to a prisoner held "in violation of the Constitution or laws or treaties of the United States[.]" Id. at § 2241(c)(3). This Court has jurisdiction to hear the merits of the instant case under that statute. Bystron v. Hoover, 456 F. Supp. 3d 635, 640 (M.D. Pa. 2020) (citing Demore v. Kim, 538 U.S. 510 (2003) and Zadvydas v. Davis, 533 U.S. 678 (2001)). Respondents' argument that this Court lacks jurisdiction

to review the constitutionality of Petitioner's detention because it is related to immigration proceedings, see ECF No. 11 at 9-11, is contrary to well-established precedent.

**A.    Exhaustion of Administrative Remedies would be Futile.**

Respondents further argue that the Petition should be denied for failing to exhaust administrative remedies. Id. at 6-7.

While Section 2241 does not include an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a Section 2241 petition. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). That said, exhaustion in this context is not mandatory, but prudential, and may be excused. Chajchic v. Rowley, No. 1:17-CV-457, 2017 WL 4401895, at *4 (M.D. Pa. July 25, 2017), report and recommendation adopted, 2017 WL 4387062 (M.D. Pa. Oct. 3, 2017). One basis for excusing exhaustion is that it would be futile for the Petitioner to attempt it. Duvall v. Elwood, 336 F.3d 228, 234 (3d Cir. 2003) (recognizing that "where exhaustion is not clearly mandated by statute, a futility exception exists.").

At the time that Petitioner was detained, there was no dispute that the statute that governed his detention was 8 U.S.C. § 1226(a), which allows an alien to seek bond before an IJ. However, recent changes in policy by DHS, see https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Mar. 23, 2026), along with the notorious decision of the BIA essentially ratifying this policy in Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 228-29, have changed things significantly.

Citing Hurtado, Respondents' current position is that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). ECF No. 11 at 4-5. Thus, absent the intervention of this Court, any future request for bond by Petitioner is unlikely to be addressed on the merits by the

EOIR or BIA. See Hurtado, 29 I. & N. Dec. at 229 n.8 (refusing to address the merits of a bond decision). Accordingly, any attempt for Petitioner to exhaust the issue of bond before either of these administrative bodies would be futile, and will be excused.

Moreover, Respondents concede that Hurtado has been rejected by this Court. Id. at 4-5. Indeed, it has been rejected by the overwhelming majority of the courts of the United States that have had the opportunity to opine on it. See, e.g., Mirdjalilov v. Warden of Fed. Det. Ctr. Philadelphia, No. 2:25-CV-7068, 2026 WL 184249, at *5 n.6 (E.D. Pa. Jan. 23, 2026) (collecting cases from within the Third Circuit).

While the undersigned is aware that the United States Court of Appeals for the Fifth Circuit recently joined the minority view that Section 1225(b) would apply to aliens in a position similar to that of Petitioner, see Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502 (5th Cir. 2026), this Court is not bound by that decision. Additionally, the reasoning of the majority in Buenrostro-Mendez is unpersuasive. Indeed, as its dissent recognizes: "[i]n sum, the government's proposed reading of the statute would mean that, for purposes of immigration detention, the border is now everywhere. That is not the law Congress passed, and if it had, it would have spoken much more clearly." Id. at 520-21 (Douglas, J., dissenting). See also Villagrez v. Bondi, No. 3:26-CV-72, 2026 WL 545380, at *1-2 (W.D. Pa. Feb. 26, 2026) (discussing the infirmities of the majority's reasoning in Buenrostro-Mendez in view of the Supreme Court's opinion in Jennings v. Rodreguez, 583 U.S. 281, 287-88 (2018), and expressing "serious doubts that [it] passes constitutional muster.").

This Court agrees with Respondents that its prior decisions, when applied to the facts of this case, require a finding that Petitioner's detention is governed under Section 1226(a) – which allows the possibility of bond – and not section 1225(b) – which mandates detention without bond.

In light of the weight of the authority against the applicability of mandatory detention under Section 1225 to aliens like Petitioner, it is both baffling and most troubling that Respondents persist in asserting it in their pleadings.

**B.      Petitioner is Entitled to a New Bond Hearing Due to His Prolonged Detention.**

It is undisputed that Petitioner received a bond hearing under Section 1226(a) in 2023, prior to the issuance of Hurtado by the BIA, and that that bond was denied because Petitioner had failed to establish that he was not a danger to the community.  ECF No. 11-1 at 10.   Petitioner filed a bond motion in August of 2025, which was denied that motion without a hearing because the IJ found that Petitioner had not established changed circumstances sufficient to set aside the initial denial of bond.  Id. at 12-13.

But Petitioner has been detained since January of 2023 – well over three years as of the date of this writing.  Thus, while Petitioner's initial detention under Section 1226(a) might have been justifiable at the time that bond was denied in 2023, his prolonged detention is not.

The Third Circuit has left open whether due process limits the detention period under 8 U.S.C. § 1226(a), where the statute provides for a bond hearing only at the outset of detention, with the burden on the detainee.  Borbot v. Warden Hudson Cnty. Corr. Fac., 906 F.3d 274, 280 (3d Cir. 2018) ("We therefore need not decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing in order to conclude that Borbot's due process rights were not violated.").

But in German Santos v. Warden Pike Cnty. Corr. Fac., 965 F.3d 203, 210 (3d Cir. 2020), the Third Circuit promulgated a test to determine when detention under 8 U.S.C. § 1226(c) – a statute requiring the mandatory detention of certain criminal aliens – became unreasonable under the Due Process Clause of the Fifth Amendment.  Indeed, "when detention becomes unreasonable,

7

the Due Process Clause demands a hearing." Id. (internal citations omitted). The Third Circuit held that such a "hearing" in this context is a bond hearing before an IJ, at which the government bears the burden of proof to justify detention by clear and convincing evidence. Id. at 213. "That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." Id. at 214.

Courts have applied the German Santos due process analysis for prolonged detention under Section 1225(b)(1). Maksaddzhon A. v. Pittman, No. 25-13734, 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025) (collecting cases). And at least one district court has applied the German Santos test to a case of prolonged detention, even when the petitioner recently had been provided with a bond hearing under Section 1226(a) where that petitioner bore the burden of proof. A.J.R. v. Rokosky, No. 25-17279, 2026 WL 592136, at *2-3 (D.N.J. Mar. 3, 2026).

The undersigned holds that Petitioner's lengthy immigration detention – which mimics mandatory detention in fact, if not in name – is sufficient to implicate his due process rights. Additionally, both the test and the remedy set forth in German Santos are well-tailored to apply to individuals held in lengthy immigration detention. Accordingly, this Court will apply German Santos to Petitioner's detention.

The determination of whether Petitioner's continued detention under is unreasonable is a "highly fact-specific inquiry." German Santos, 965 F.3d at 210 (internal citations and quotation marks omitted). To aid in this inquiry, the Third Circuit has identified four factors for consideration. These factors are: (a) the duration of Petitioner's detention; (b) the likelihood of continued detention; (c) the reasons for any delay; and (d) the conditions of Petitioner's confinement. Id. at 212. These will be evaluated *seriatim*.

8

### 1.    Duration

The first and "most important" factor for the habeas court to consider is the "duration of detention."    Id. at 211.    Although the Third Circuit refused to adopt a presumption of reasonableness of any specific duration in German Santos, it recognized that the detention of the petitioner in that case for two-and-a-half-years was "five times longer than the six months that [the Supreme Court in Demore v. Kim, 538 U.S. 510, 530-31 (2003)] upheld as only 'somewhat longer than average.'" German Santos 965 F.3d at 211, 212.

Here, Petitioner has been detained since January 13, 2023– more than 38 months as of the date of this writing.  Petitioner received a bond hearing in 2023 at which he bore the burden, and has been denied another substantive bond hearing ever since.  Under these circumstances, this Court finds that the length of his detention weighs strongly in favor of granting relief.

### 2.    Likelihood of continued duration

The second factor the habeas court must consider is "whether the detention is likely to continue."    Id. at 211.    When an alien's removal proceedings "are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable."    Id.

Here, the BIA has yet to remand Petitioner's case to an IJ.  Respondents concede that Petitioner's continued detention is likely, and that this factor weighs in favor of Petitioner.  ECF No. 15 at 4.  This Court agrees.  This factor also weighs heavily in favor of granting relief.

### 3.    Reasons for delay

The third factor that the habeas court must consider is "the reasons for the delay such as a detainee's request for continuances." German Santos, 965 F.3d at 211.  In this analysis, the Court "ask[s] whether either party made careless or bad-faith 'errors in the proceedings that causes unnecessary delay.'" Id. (quoting Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d. Cir. 2011)).

Courts are not to "hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings" because "[d]oing so, and counting this extra time as reasonable, would effectively punish [him] for pursuing applicable legal remedies." German Santos, 965 F.3d at 211 (citations and internal quotation marks omitted). Similarly, any legal errors by the government should not be held against Respondents unless there is evidence of carelessness or bad faith. Id. "That said, detention [] can still grow unreasonable even if the Government handles the removal proceedings reasonably." Id. (internal citation omitted).

Here, the Third Circuit granted Petitioner's Petition for Review in September of 2025 with an order for the BIA to remand Petitioner's case to an IJ, and issued its mandate on November 10, 2025. ECF No. 1-1 at 66-67. Petitioner asserted on February 12, 2026, the BIA still had not remanded Petitioner's case. ECF No. 13 at 11. Respondents do not dispute this, but instead concede that the remand was "still pending" as of February 20, 2026. ECF No. 15 at 4.

The BIA's failure to remand this case for several months, despite clear instructions by the Third Circuit, is the sort of unreasonable careless or bad faith delay that was contemplated by the Third Circuit in German Santos. The government is solely responsible for it. Therefore, this factor weighs heavily in favor of granting relief.

### 4.    Conditions of confinement

The fourth and final factor the habeas court considers is "whether the alien's conditions of confinement are meaningfully different from criminal punishment." German Santos, 965 F.3d at 211.

Neither party bothered to submit actual evidence of Petitioner's conditions of confinement. That said, the record indicates that Petitioner was held, until recently, for a lengthy period of time

10

at MVPC. ECF No. 1-1 at 46 and 81. This Court has recently held that the conditions of confinement at MVPC are like those of a prison. See, e.g., Morgan v. Oddo, No. 3:24 CV 221, 2025 WL 1134979, at *4-5 (W.D. Pa. Apr. 17, 2025). Additionally, while Petitioner was moved to Miami Correctional Facility after the filing of the Petition, Respondents' characterization of the conditions therein – with the apparent exception of a billiards table – track with those that are, in the undersigned's experience, typical of many prisons in the Western District of Pennsylvania.

Finally, while it is implicit in the nature of this federal habeas proceeding, it is worth mentioning that, like any prison, Petitioner is not free to leave it.

Accordingly, this factor weighs in favor of granting relief.[5]

### 5.    Balance of factors

Petitioner has shown that the factors set forth in German Santos weigh strongly in favor of the conclusion that his detention has become unreasonable, and that his continued detention without a bond hearing at which the government bears the burden violates his rights under the Due Process Clause of the Fifth Amendment.

## III.    CONCLUSION

For the reasons set forth herein, the Petition will be conditionally granted.

---

[5] Even if this Court were to accept Respondents' suggestion to treat Petitioner's conditions of confinement as "a nonfactor or neutral[,]" ECF No. 15 at 7, it would not alter the conclusion that Petitioner is entitled to relief.

A certificate of appealability is not required for federal detainees seeking relief under Section 2241. Muza v. Werlinger, 415 F. App'x 355, 357 n.1 (3d Cir. 2011). See also 28 U.S.C. § 2253(c)(1). Therefore, it is not necessary to determine whether one should be issued here.

An appropriate Order follows.

Dated: March 23 , 2026

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of record (*via* CM/ECF)

12